**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE ) | |
| JOSE PEREZ ) | |
| DEBTOR ) | |
| _____ ) | |
| JOSE PEREZ & ) | |
| MARIA C. NIEVES, ) | |
| ) | CHAPTER 13 |
| Plaintiffs, ) | |
| v. ) | |
| ) | CASE NO. 08-40693-JBR |
| FIRST OPTION MORTGAGE CORP., ) | |
| FERNANDO DA SILVA MACHADO, ) | |
| WMC-GEMB MORTGAGE CORP., ) | AP. NO. 08-4081 |
| SECURITIZED ASSET BACK ) | |
| RECEIVABLES TRUST 2006-WM3, & ) | |
| DEUTSCHE BANK NATIONAL ) | |
| TRUST, TRUSTEE ) | |
| ) | |
| Defendants ) | |

**MEMORANDUM OF DECISION ON DEFENDANTS' MOTIONS TO DISMISS**

This matter came before the Court on Motions of Defendants, First Option Mortgage Corporation ("First Option") and Deutsche Bank National Trust ("DBNT"), to Dismiss (Docket # # 6 and 18) and Plaintiffs' Oppositions to the Motions to Dismiss. (Docket # # 14 and 20). Plaintiffs' Amended Complaint (Docket # 5) contains seven counts: objecting to DBNT's claim (Count I), seeking a declaration that Powers of Attorney executed by Plaintiffs and mortgages executed by Fernando Da Silva Machado ("Machado") on Plaintiffs' behalf are void (Counts II & III), alleging violations of the Fair Credit Reporting Act by First Option (Count IV), alleging a breach of fiduciary duty by First Option (Count V), alleging unfair and deceptive acts or practices in violation of M.G.L. c. 93A, § 2 by First Option (Count VI), and seeking an award of attorney's fees against First Option (Count VII). DBNT withdrew its Motion to Dismiss Count I, and Plaintiffs have assented to dismissal without prejudice of Count IV. Therefore, Count I is not addressed in this decision and the Court dismisses Count IV without prejudice.

**FACTS**

The facts are drawn from Plaintiffs' Amended Complaint. For the purpose of deciding these Motions to Dismiss, the Court assumes that all of the facts contained in Plaintiffs' Amended Complaint are true. *See LeGoff v. Trustees of Boston Univ.*, 23 F. Supp.2d 120, 130 (D. Mass. 1998). Plaintiff, Debtor Jose Perez ("Perez"), was approached by Machado at some point during April of 2006 with the prospect of purchasing a home. (Pls.' Am. Compl. ¶ 11). At that time, and at least up until July 31, 2006, Machado was employed by, or acting as an agent of, First Option. (Pls.' Am. Compl. ¶ 15). Machado represented that he could secure a mortgage for Perez at a fixed interest rate that would carry a monthly payment of $1,200 including principal, interest, taxes, and insurance. (Pls.' Am. Compl. ¶ 11). Machado later informed Perez that his credit was subpar and asked Perez to find a person to co-sign the loan necessary to purchase a home. (Pls.' Am. Compl. ¶ 14). Plaintiff, non-debtor Maria Nieves ("Nieves"), who is Perez's mother, agreed to co-sign the loan. (Pls.' Am. Compl. ¶ 14).

A closing was held on July 31, 2006 and Plaintiffs, as joint tenants, received a deed to 12 Derwin Street, Leominster, MA for a $269,900.00 purchase price. (Pls.' Am. Compl. ¶ 16). At the closing, Machado executed two promissory notes, supposedly as Attorney in Fact for Nieves, and two mortgages, supposedly as Attorney in Fact for Nieves and Perez. (Pls.' Am. Compl. ¶ 17). Although Machado executed the mortgages securing the notes as Attorney in Fact for both Perez and Nieves, Machado executed both notes as Attorney in Fact only for Nieves, and not Perez. (Pls.' Am. Compl. ¶ 17, 38). The first note was for $215,920.00, carried an initial monthly payment of $1,660.24 at a rate of 8.5% for two years, and thereafter the interest rate would adjust to the six-month LIBOR plus 7% with subsequent adjustments every six months. (Pls.' Am. Compl. ¶ 19). The second note was a 15-year balloon note for $53,980.00 and carried a monthly payment of $513.66 at 10.99%. (Pls.' Am. Compl. ¶ 21). The payments on the loans during the first two years, including property taxes and insurance, would total $2,481 per month. (Pls.' Am. Compl. ¶ 29). Perez could not afford this payment with a monthly gross income of $4,217.25 and when the loans reached their fully indexed rates the debt-to-income ratio of both loans combined would be 66%. (Pls.' Am. Compl. ¶ 29).

The Powers of Attorney that Machado utilized to purportedly act on behalf of Plaintiffs as their Attorney in Fact at the closing appear to bear Plaintiffs' signatures, are notarized, and are filed in the North Worcester Registry of Deeds. (Pls.' Am. Compl. ¶ 22-23). Plaintiffs maintain that they did not sign the Powers of Attorney or signed them under the mistaken belief that they

2

were some another type of document. (Pls.' Am. Compl. ¶ 22-23). During the closing, Plaintiffs waited in a lobby area outside the office of the attorney handling the closing. (Pls.' Am. Compl. ¶ 18). First Option received compensation of at least $8,972.80 from the mortgage transaction. (Pls.' Am. Compl. ¶ 24).

After the closing, Perez protested the terms of the loans to Machado, and Machado responded by promising that he would arrange refinancing within six months that would consolidate the two loans into one before the first interest rate change. (Pls.' Am. Compl. ¶ 27). Perez continuously attempted to contact Machado in the months after the closing to no avail. (Pls.' Am. Compl. ¶ 28). Nine months after the closing, Perez successfully reached Machado, and Machado stated that he was no longer a mortgage broker and could not help Perez. (Pls.' Am. Compl. ¶ 28).

On or about June 22, 2007, someone submitted an application in the name of Jose Nieves of 12 Derwin Street, Leominster, MA to refinance the original loan to First NLC Financial Services, LLC ("First NLC") (Pls.' Am. Compl. ¶ 30). Perez did not submit this application, and alleges that no one by the name of Jose Nieves resides at 12 Derwin Street. (Pls.' Am. Compl. ¶ 28). Five other refinance loan applications regarding the 12 Derwin Street property were submitted to First NLC by unknown persons. (Pls.' Am. Compl. ¶ 31). Plaintiffs did not authorize submission of these loan applications, and believe that Machado and/or First Option are responsible for such submissions. (Pls.' Am. Compl. ¶ 31-32). During 2007, several entities, which appear to be mortgage lenders, obtained Plaintiffs' credit reports for the alleged purpose of processing the loan applications that Plaintiffs believe were submitted by Machado and/or First Option. (Pls.' Am. Compl. ¶ 33). Perez fell behind on his mortgage payments in September of 2007 and a foreclosure sale was scheduled for March 22, 2008, which was stayed when Perez's bankruptcy case was filed. (Pls.' Am. Compl. ¶ 34).

## POSITIONS OF THE PARTIES

First Option argues that this Court lacks jurisdiction to hear Nieves' claims because First Option and Nieves are non-parties to the bankruptcy proceedings and the outcome of her claims will not affect administration of the bankruptcy estate. Nieves argues that this Court has jurisdiction to hear her claims because they are "related to" Perez's main bankruptcy case by virtue of the fact that Nieves and Perez own the subject property as joint tenants. In the

3

alternative, Nieves argues that her claims are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367(a).

First Option argues that Plaintiffs' complaint fails to state a claim for relief against it because Machado acted outside the scope of his authorized activities, while Plaintiffs argue that the scope of an agency relationship cannot readily be determined on a motion to dismiss. Furthermore, Plaintiffs argue that even if Machado was acting outside the scope of the agency relationship, First Option's receipt of compensation from the loan transaction is sufficient at this stage to suggest that First Option ratified the transaction. Plaintiffs argue that a fiduciary relationship was created with First Option because of representations that Machado made to Perez, because First Option had the discretion to negotiate a loan for Plaintiffs, and because Plaintiffs executed a power of attorney with Machado. First Option argues that representations made by Machado did not create a fiduciary relationship.

First Option argues that Machado's representations describing the $1,200 per month mortgage payment that he would arrange for Perez were not unfair or deceptive because there is no information to indicate that Perez would not have qualified for such a loan. Plaintiffs argue that Machado's actions were unfair and deceptive because Machado misrepresented Perez's ability to qualify for a certain mortgage payment, Perez believed that this would be his payment for the home he purchased, and Machado brokered loans with inherently unfair terms.

DBNT argues that this Court lacks jurisdiction to hear Plaintiffs' claims because Plaintiffs' allegations that Defendants engaged in fraud and unfair and deceptive actions in procuring loans and mortgages are non-core, common law and statutory claims that fall outside the scope of core proceedings authorized by the Bankruptcy Code. In the alternative, DBNT requests that the Court abstain from exercising jurisdiction over Plaintiffs' claims. Plaintiffs argue that Counts II & III are core matters because they allege fraudulent procurement of Powers of Attorney which will determine the validity of DBNT's mortgages. *See* 28 U.S.C. § 157(b)(2)(K). Plaintiffs also argue that DBNT lacks standing to challenge the Court's jurisdiction over Counts V-VII because they are only directed at First Option, not DBNT.

## DISCUSSION

**A.     Nieves' Claims (Counts II, V, VI, & VII)**

First Option argues that this Court lacks jurisdiction to hear Nieves' claims. This Court's jurisdiction is set forth in 28 U.S.C. § 157. This Court has jurisdiction to "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 [if] referred [by the district court]," 11 U.S.C. § 157(b)(1), as well as non-core matters "that [are] otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). The District of Massachusetts has referred all such proceedings to the bankruptcy court. L.R. D. Mass. 201. Nieves argues that this Court has jurisdiction to hear her claims because they are "related to" Perez's bankruptcy case.

The First Circuit has limited "related to" jurisdiction to instances where the outcome of the litigation could "potentially have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action . . . ." *In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d 100, 105 (1st Cir. 2005); *see also In re N. Atl. Millwork Corp.*, 155 B.R. 271, 280 (Bankr. D. Mass. 1993) (stating that there is "related to" jurisdiction when the outcome of the dispute will "affect[] the amount of property available for distribution or the allocation of property among creditors."). Nieves is not a party to the bankruptcy proceedings. Any damages that she may recover from Defendants will not be "available for distribution . . . among the creditors" of the debtor. *Id.* Nieves' argument that this Court has "related to" jurisdiction regarding the validity of her power of attorney and mortgage because Nieves and Perez own the property as joint tenants with "inextricably bound" rights and obligations is also unavailing. Perez and Nieves are joint tenants, each owning an undivided interest in the property. The validity of Nieves' mortgage does not impact Perez's undivided interest because Nieves' mortgage, if valid, will *only* encumber Nieves' undivided interest. *See, e.g.*, *Heffernan v. Wollaston Credit Union*, 30 Mass. App. Ct. 171, 177 (1991) ("During the lifetime of the parties, a single joint tenant in a traditional joint tenancy *may not convey or encumber the entire interest in the jointly-held property but only his own limited interest . . . .*"). Therefore, this Court lacks "related to" jurisdiction to hear Nieves' claims because their outcome will not "potentially have some effect on the bankruptcy estate." *See In re Boston Reg'l Med. Ctr., Inc.*, 410 F.3d at 105.

Finally, Nieves argues that this Court has supplemental jurisdiction to hear her claims pursuant to 28 U.S.C. § 1367(a). Nieves cites *Montana v. Goldin (In re Pegasus Gold Corp.)*, 394 F.3d 1189 (9th Cir. 2005) for the proposition that bankruptcy courts can exercise supplemental jurisdiction. No other Circuit has ever adopted this holding. In fact, Judge Feeney

5

has labeled the argument that bankruptcy courts have supplemental jurisdiction as a "dubious proposition." *In re Adamson*, 334 B.R. 1, 12 (Bankr. D. Mass. 2005); *see also In re Found. for New Era Philanthropy*, 201 B.R. 382, 398 (Bankr. E.D. Pa. 1996) (deciding that bankruptcy courts do not have supplemental jurisdiction because § 1367 "makes no reference to the bankruptcy court"). This Court sees no basis to adopt the Ninth Circuit's holding in *Montana* recognizing supplemental jurisdiction for bankruptcy courts. Consequently, Nieves Counts II, V, VI, and VII shall be dismissed.

**B.    Perez's Claims**

    **1.    Validity of Perez's Power of Attorney and Mortgage (Count III)**

DBNT argues that this Court lacks jurisdiction to hear Perez's claims because Perez's allegations that Defendants engaged in fraud and unfair and deceptive actions in procuring loans and mortgages are non-core, common law and statutory claims that fall outside the scope of core proceedings authorized by the Bankruptcy Code.[1] Perez argues that this Court has jurisdiction to determine the validity of Perez's power of attorney and mortgage under 28 U.S.C. § 157(b)(2)(K), which provides that the bankruptcy courts have jurisdiction to "determine[] . . . the validity, extent, or priority of liens." The crux of Perez's argument is that the mortgage is invalid because it was executed on his behalf under the authority of a fraudulently procured power of attorney. Determination of the validity of the power of attorney will therefore determine the validity of the mortgage purportedly granted to DBNT by Perez. Consequently, this Court has jurisdiction to hear Count III pursuant to § 157(b)(2)(K) and DBNT's Motion to Dismiss Count III shall be denied.

    **2.    Breach of Fiduciary Duty and Disgorgement of Mortgage Broker Compensation (Count V)**

First Option argues that Perez's claim of breach of fiduciary duty fails to state a claim upon which relief may be granted. A motion to dismiss for failure to state a claim upon which relief may be granted under Fed. R. Civ. Pro. 12(b)(6) "tests the legal sufficiency of a complaint." *Dixon v. Shamrock Fin. Corp.*, 482 F. Supp. 2d 172, 174 (D. Mass. 2007). In order to survive the motion, the complaint must allege a "plausible entitlement to relief" and contain

---

[1] DBNT moved to dismiss Perez's breach of fiduciary duty claim, 93A claim, and claim for attorney's fees (Counts V-VII) on this basis as well, but Plaintiffs have made clear in their opposition to DBNT's Motion to dismiss that Counts V-VII are only directed at First Option. Since DBNT is not a defendant as to Counts V-VII, the Court will deny DBNT's Motion to Dismiss Counts V-VII for lack of standing.

6

"factual allegations" that "raise a right to relief above the speculative level." *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965-67 (2007). The court deciding the motion must assume that "all allegations in the complaint are true (even if doubtful in fact)." *Id.* The court must also "draw all reasonable inferences in the plaintiff's favor." *Dixon*, 482 F. Supp. 2d at 174.

First Option argues that Machado did not create a fiduciary duty with Perez. Perez has pled that Perez may have signed a power of attorney that, if found valid, would enable Machado to act on Perez's behalf. In Massachusetts, it is well settled that execution of a power of attorney creates a fiduciary relationship. *See, e.g., Gagnon v. Coombs*, 39 Mass. App. Ct. 144, 154 (2005). Furthermore, Perez also argues that representations made by Machado to Perez created a fiduciary relationship. Machado represented to Perez that Machado would be able to arrange a fixed-rate mortgage for Perez that would carry a monthly payment of $1,200 including principal, interest, taxes, and insurance. In Massachusetts, assertions and representations made by an agent holding himself out as a "specialist, consultant, or counselor" can create a fiduciary relationship when reliance results. *Cf. Baldwin Crane & Equip. Corp. v. Riley & Rielly Ins. Agency, Inc.*, 44 Mass. App. Ct. 29, 31-32 (1997) (insurance broker). First Option argues that Perez cannot show that he relied on Machado's representations. However, Perez's protestations of the terms of the loan after the closing, and subsequent inability to make payments on the loan are sufficient allegations that Perez may have relied upon Machado's representations. Therefore, Perez has pled "plausible" factual allegations that, if proved, would establish a fiduciary relationship.

First Option argues that it cannot be liable for Machado's actions while acting under the authority of a power of attorney because such actions were outside the scope of Machado's authorized activities. The scope of an agent's authority is a question of fact. *See Choate v. Bd. of Assessors of City of Boston*, 304 Mass. 298, 300 (1939). First Option relies on the statutory definition of mortgage brokers contained in M.G.L. c. 255E, § 1 to support this argument.[2] First Option argues that Machado acted outside the scope of his authorized activities because "executing documents on the borrower's behalf" under a power of attorney is not included in this statutory definition. First Option's reliance on M.G.L. c. 255E, § 1 is misplaced. This statutory definition does not restrict what activities mortgage brokers can engage in, but rather sets forth the business activities that trigger the requirement to obtain a mortgage broker license from the

---

[2] Chapter 255E, § 1 defines a mortgage broker as "any person who for compensation or gain, or in the expectation of compensation or gain, directly or indirectly negotiates, places, assists in the placement, finds or offers to negotiate, place, assist in the placement or find mortgage loans on residential property for others."

7

Commissioner of Banks of the Commonwealth.  *See generally* M.G.L. c. 255E, § 2-5.  First Option was certainly permitted to authorize Machado to engage in activities above and beyond what the statutory definition contains.  Therefore, the statutory definition cannot serve as dispositive authority for determining that Machado was acting outside the scope of his authorized activities.  Finally, even if this Court were to accept First Option's argument that Machado's acted outside the scope of his authorized activities, Perez's allegation that First Option received $8,972.80 from the mortgage transaction is a "plausible" claim that, if proved, would "raise a right to relief above the speculative level" for First Option's ratification of Machado's actions.  *See Colony of Wellfleet, Inc. v. Harris*, 71 Mass. App. Ct. 522, 529-30 (2008) (finding ratification where principal received proceeds of the sale).

Lastly, First Option argues that Machado did not breach a fiduciary duty because the mortgage fee derived from the transaction was not excessive.  Receipt of excessive compensation is a breach of a fiduciary duty.  *See Bessette v. Bessette*, 385 Mass. 806, 809 (2008) (stating that directors of a corporation stand in a fiduciary capacity and cannot receive salaries greater than what their day of work is fairly worth).  Perez has sufficiently pled that a fiduciary relationship was established and that First Option breached this duty by deriving excessive compensation.  At this stage, this Court is unable to determine whether or not receipt of commission in the amount of $8,972.80 for a $269,900 mortgage transaction is excessive as a matter of law.  Consequently, First Option's Motion to Dismiss Count V shall be denied.

### 3.    93A Claims (Count VI)

First Option argues that Perez's claim of violations of M.G.L. c. 93A, § 2 fails to state a claim upon which relief may be granted.  Chapter 93A, § 2 makes "unfair or deceptive acts in the conduct of trade or commerce" unlawful.  The statute vests the authority to make rules and regulations interpreting the provisions of Chapter 93A, § 2 with the Attorney General.  One such regulation declares that:

> [i]t is an unfair or deceptive act or practice for a mortgage broker to make any representation or statement of fact . . . [that] is false or misleading . . . or if the mortgage broker or lender does not have sufficient information upon which a reasonable belief in the truth of the statement could be based.  Such claims or representations include . . . the availability, terms, conditions, or charges, incident to the mortgage transaction and the possibility of refinancing.[3]

---

[3] 940 Mass. Code Regs. 8.06(1).  This regulation was in effect when Machado's conduct allegedly took place.

8

The thrust of Perez's 93A claim is that Machado's statement that he would arrange a mortgage loan for Perez carrying a monthly payment of $1,200 including principal, interest, taxes, and insurance was a misrepresentation because Perez ultimately received mortgage loans carrying monthly payments of $2,481. First Option argues that this allegation fails to state a claim upon which relief can be granted because there is no information to suggest that Perez would not have qualified for such a loan. However, whether or not Perez *would* have qualified for a mortgage carrying a monthly payment of $1,200 is not determinative because Perez has pled facts alleging that Machado represented he would arrange a mortgage loan with a fixed interest rate carrying a monthly payment of $1,200. It is undisputed that Perez never received such a loan. Specifically, Perez received mortgage loans with adjustable interest rates that required payments of more than *double* the amount represented by Machado. Therefore, Perez's allegations establish a "plausible" claim that, if proved, would "raise a right to relief above the speculative level" for Machado's false representations as to the "availability, terms, conditions, or charges incident to the mortgage transaction." 940 Mass. Code Regs. 8.06(1). Consequently, First Option's Motion to Dismiss Count VI shall be denied.

    4.    **Attorney's Fees (Count VII)**

Attorney's fees are a potential remedy available for violations of Chapter 93A. The Court treats this count as a remedy sought for Count VI, which the Court does not dismiss. Therefore, First Option's Motion to Dismiss Count VII shall be denied.

**C.**    **Abstention**

DBNT requests that the Court abstain from hearing Plaintiffs' claims. Plaintiffs make no argument in opposition to this request. "[I]n the interest of justice, or in the interest of comity with State courts or respect for State law [the bankruptcy courts may] . . . abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Among the factors for the Court to consider when faced with a request for abstention include "the interests of judicial economy," *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 456 F. Supp.2d 13, 161 (D. Me. 2006) (citing *In re Colarusso*, 382 F.3d 51, 57 (1st Cir. 2004)) and "minimiz[ing] additional expense[s] to the parties." *In re Toro*, 185 B.R. 673, 674 (Bankr. D. R.I. 1995). Here, the Court has determined that it does not have jurisdiction to hear Nieves' claims. Nieves' claims are based upon the same exact set of facts as Perez's claims. If the Court were to deny DBNT's request for abstention, the end result would

be that Perez's claims would proceed in this Court, while Nieves' claims would proceed in state court. Such a result would turn a blind eye to "the interests of judicial economy" and would substantially increase the parties' litigation expenses. Accordingly, the Court will abstain from hearing all of Plaintiffs' claims to promote the interests of judicial economy and to minimize the parties' litigation expenses.

## CONCLUSION

First Option's Motion to Dismiss is hereby GRANTED with respect to Nieves' Counts II, V, VI, and VII.

DBNT's Motion to Dismiss is hereby DENIED with respect to Perez's Count III.

First Option's Motion to Dismiss is hereby DENIED with respect to Perez's Counts V, VI, and VII.

Perez's voluntary dismissal is hereby GRANTED without prejudice with respect to Count IV.

The Court will abstain from deciding all of Plaintiffs' claims.

A separate order will issue.


Dated: September 3, 2008                          By the Court,

                                                  *Joel B. Rosenthal*

                                                  _____
                                                  Joel B. Rosenthal
                                                  United States Bankruptcy Judge